UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARAH LYNN TYLER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

Hon. Sally J. Berens

Case No. 1:19-cv-871

**OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence and in accordance with the law it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks judicial review of this decision.

For the following reasons, the Court will **affirm** the Commissioner's decision.

**Standard of Review**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal

standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and his findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Dept. of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## Procedural Posture

Plaintiff filed an application for DIB on November 22, 2016, alleging that she became disabled on August 30, 2015, due to degenerative disc disease of the neck and lower back, chronic migraines, severe pinched nerves, and Crohn's Disease. (PageID.83–84, 95.) Plaintiff

was age 38 at the time she filed her application. (PageID.83.) Plaintiff had a high school education and past work as a housekeeper and caregiver. (PageID.93.) After Plaintiff's application was denied (PageID.103–07), she requested a hearing before an Administrative Law Judge (ALJ). (PageID.112–13.) On July 20, 2018, Amy L. Rosenberg conducted a hearing and received testimony from Plaintiff and Amelia L. Shelton, an impartial vocational expert. (PageID.58–81.) On September 20, 2018, ALJ Rosenberg issued a written decision finding that Plaintiff was not disabled from August 30, 2015, through the date of the decision. (PageID.33–45.) The Appeals Counsel denied Plaintiff's request for review on August 29, 2019. (PageID.24–28.) Therefore, the ALJ's ruling became the Commissioner's final decision. 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff initiated this civil action for judicial review on October 22, 2019.

## Analysis of the ALJ's Opinion

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her RFC is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

After finding that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, the ALJ found that Plaintiff suffered from the following severe impairments: (1) degenerative disc disease; (2) morbid obesity; (3) tension and/or migraine headaches; and (4) Crohn's Disease. (PageID.35.) The ALJ determined that Plaintiff's left cubital tunnel syndrome and left carpal tunnel syndrome and sleep apnea were non-severe. In addition, the ALJ found no record evidence of a mental impairment. (PageID.36.)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.31–32.) The ALJ considered Listing 1.04 (disorders of the spine), noting that an MRI of the lumbar spine taken on September 16, 2015, showed facet arthropathy throughout the lumbar spine, but no

4

significant disc bulge or stenosis. She further noted that an April 2016 MRI of the cervical spine showed a mildly bulging disc at C5-C6 with very minimal flattening of the cervical cord at C5-C6, but no herniation or spinal stenosis. The ALJ concluded that the listing was not met because there was no evidence of root or spinal cord compromise and Plaintiff was able to ambulate effectively.[2] (PageID.36.) Regarding Plaintiff's morbid obesity, the ALJ stated:

> Although there is no longer a specific listing for obesity, the claimant's obesity has been considered using the criteria of the musculoskeletal, respiratory and cardiovascular impairments under Listings 1.00Q, 3.00I, and 4.00F, respectively (see SSR 02-1p). Obesity and its effects are considered when evaluating disability as the combined effects of obesity can increase the effects of other impairments (SSR 02-1p). While the claimant's obesity could increase the stress on her body and thus contribute to her pain, there is no medical evidence of record of any specific impact on the pain levels or the claimant's function as a result of her weight or body habitus. Therefore, I find that when the effects of obesity are taken into consideration, the claimant does not meet the requirements of any listing.

(PageID.37.)

With respect to Plaintiff's RFC, the ALJ determined that Plaintiff retained the capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), except that she: (1) could occasionally climb ramps and stairs; (2) could never crawl or climb ladders, ropes, or scaffolds; (3) could occasionally balance, stoop, kneel, crouch and crawl; (4) could tolerate occasional exposure to vibration; (4) could not work at unprotected heights and could not operate dangerous machinery; and (5) required the flexibility to leave her workstation outside of scheduled breaks to use the bathroom approximately three times during the day and would be away from her workstation five to ten minutes each time. (PageID.37–38.)

At step four, the ALJ determined that Plaintiff could not perform her past relevant work as a caregiver or assistant retail manager. (PageID.43.) At the fifth step, the ALJ determined that

---

[2] The ALJ also considered Listing 5.06 (inflammatory bowel disease). The ALJ found that this listing was not met because there was no evidence showing that any of the criteria for that listing were met. (PageID.37.)

5

a person of Plaintiff's age, education, work experience, and RFC could perform the jobs of document preparer, call out operator, and order clerk, 89,000 of which exist in the national economy. (PageID.43–44.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## Discussion

Plaintiff raises two issues in her appeal: (1) whether the ALJ erred in failing to find that Plaintiff's spinal impairments met or were equal in severity to the requirements of Listing 1.04A; and (2) whether substantial evidence supports the ALJ's assessment of Plaintiff's subjective complaints.

**I.  Listing 1.04A**

Plaintiff argues that the ALJ erred in failing to find that her impairments met or equaled the requirements of Listing 1.04A. At step three of the disability evaluation process, the Commissioner must consider whether a claimant's impairments meet or medically equal any of the relevant listing requirements of 20 C.F.R. Part 404, Subpart P, App. 1, 20 C.F.R. § 404.1520(a). In order to meet a listed impairment, the claimant must show that her impairment meets all of the criteria for that listing. *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987). In addition, where the listed impairment is neither permanent nor expected to result in death, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months." *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). An impairment that meets only some of the requirements of a listing does not qualify despite its severity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Conversely, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled and entitled to benefits. *See Jones v. Comm'r of Soc. Sec.*, 336

F.3d 469, 474 (6th Cir. 2003). The claimant bears the burden of demonstrating that he meets or equals a listed impairment. *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014).

> Listing 1.04A requires the following:
>
> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root...or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.09. To carry her burden, Plaintiff must show that she meets the listing criteria for a continuous period of 12 months. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 499 (6th Cir. 2006); *see* 20 C.F.R. § 404.1525(c)(3).

To the extent Plaintiff argues that the ALJ erred in failing to find that her back impairment met the requirements of listing 1.04A, her argument lacks merit. The ALJ noted that a September 16, 2015 MRI of the lumbar spine showed facet arthropathy throughout the lumbar spine, but no significant disc bulges and that an April 2016 MRI of the cervical spine showed a mildly bulging disc at C5-C6 within very minimal flattening of the cervical cord at C5-C6, but no herniation or spinal stenosis. (PageID.36, 377–79.) The ALJ further noted that Plaintiff's medical records failed to document nerve root or spinal cord compromise.[3] In addition, contrary to the requirements of Listing 1.04A, Plaintiff's physical examination records routinely failed to demonstrate motor loss and consistently documented full muscle motor function. (PageID.272, 275, 373, 407, 411 and 488.) Plaintiff does not point to a 12-month period of motor loss with

---

[3] The ALJ did not limit her consideration of Listing 1.04 to subparagraph A, but also considered subparagraphs B and C as well. (PageID.36.)

sensory or reflex loss. Moreover, to the extent Plaintiff alleges that a lumbar condition satisfies the listing, she fails to point to evidence in the record showing positive findings for straight leg raising in both the sitting and supine positions.[4] *See Sistrunk v. Comm'r of Soc. Sec.*, No. 1:17-cv-1771, 2018 WL 3126585, at *5 (N.D. Ohio June 26, 2018) (noting that to satisfy Listing 1.04A where the lower back is involved, a claimant is required to demonstrate, among other things, "positive straight leg raise test, in both the sitting and supine positions").

Plaintiff further argues that the ALJ relied on her own lay opinion to determine whether Plaintiff met Listing 1.04A because she rejected the opinion of state agency consultant Keith Camann, M.D., that Plaintiff could do light work with limitations. As Plaintiff acknowledges, Dr. Camann's opinion would preclude a finding that Plaintiff met Listing 1.04A. (ECF No. 11 at PageID.514–15.) The ALJ, however, did not reject Dr. Camann's opinion. Rather, she gave it only partial weight because the hearing-level record in July 2018 showed that Plaintiff was more limited than when Dr. Caman reviewed the record in March 2017. (PageID.42, 94.) That evidence included that Plaintiff needed an implanted spinal infusion system that constantly delivered pain medication. (PageID.42.) Nonetheless, the ALJ properly relied on Dr. Camann's opinion that Plaintiff did not meet Listing 1.04A for her step three finding. Moreover, even without Dr. Camann's opinion, the ALJ was competent to determine whether Plaintiff met Listing 1.04A. *See, e.g., Jackson v. Comm'r of Soc. Sec.*, No. 1:15-CV-384, 2016 WL 1211425, at *7 (W.D. Mich. Mar. 29, 2016) (holding that the ALJ correctly noted that doctor's "opinion that Plaintiff met a listing, was an opinion reserved to the Commissioner"); *Axton v. Comm'r of Soc. Sec.*, No. 2:12-CV-216, 2014 WL 359820, at *4 (E.D. Tenn. Feb. 3, 2014) ("Opinions on

---

[4]The single instance Plaintiff cites, Dr. Hankenson's August 31, 2015 right-side positive straight-leg raising finding, does not indicate a positive finding in both the sitting and supine positions. (PageID.272.)

some issues, such as ... whether a claimant meets a Listing . . . are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.") (citing 20 C.F.R. § 404.1527(d); SSR 96–5p) (internal quotations omitted).

A claimant may show that an impairment or combination of impairments medically equal the criteria of a listing. 20 C.F.R. § 404.1525(c)(5). An impairment or combination of impairments is considered medically equivalent to a listed impairment "if the symptoms, signs and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairments." *Land v. Sec'y of Health & Human Servs.*, 814 F.2d 241, 245 (6th Cir. 1986) (per curiam). To demonstrate medical equivalence, the claimant must "present medical evidence that describes how [her] impairment is equivalent to a listed impairment." *Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004). This means that the claimant must present medical findings showing symptoms or diagnoses equal in severity and duration "to all the criteria for the one most similar listed impairment." *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 874 (6th Cir. 2003) (internal quotation marks omitted).

It is undisputed that Plaintiff has a disorder of the spine described in Listing 1.04A, as the ALJ found that Plaintiff has degenerative disc disease. However, Plaintiff fails to point to medical findings that are equal in severity to all of the criteria the listing and does not fully explain how medical findings in the record equal the specified criteria. Instead, she relies on her obesity, pain, and other symptoms to satisfy the listing's requirements. But these do not suffice. For finding medical equivalence, an ALJ will consider whether the "symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria," but "will not substitute [claimant's] allegations of pain or other symptoms for a missing or deficient sign or laboratory

9

finding to raise the severity of [claimant's] impairment(s) to that of a listed impairment." 20 C.F.R. §§ 404.1529(d)(3); *see Sullivan*, 493 U.S. at 532 (noting that the regulations require a higher standard for meeting a listing impairment because it creates a "presumption of disability that makes further inquiry unnecessary"). Moreover, although the ALJ was not required to obtain a medical expert's opinion on equivalence if she believed that the evidence did not reasonably support a finding of medical equivalence, *see* SSR 17-2p, 2017 WL 39288306, at *4 (Mar. 27, 2017), Dr. Camann's signature on the disability determination constitutes probative evidence that medical equivalence was considered. *See Hicks v. Comm'r of Soc. Sec.*, 105 F. App'x 757, 762 (6th Cir. 2004) (quoting SSR 96-6p, 1996 WL 362204 (July 2, 1996) ("The signature of a State agency medical or psychological consultant on an SSA831–U5 (Disability Determination and Transmittal Form) . . . ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review."). Finally, Plaintiff fails to cite any opinion in the record that equates her impairments to Listing 1.04A.  Accordingly, this argument is rejected.

**II.    The ALJ's Assessment of Subjective Complaints**

Plaintiff argues that the ALJ failed to properly assess her subjective complaints of pain in accordance with SSR 16-3p. An ALJ evaluates a plaintiff's statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability under SSR 16-3p. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). "An ALJ must first determine 'whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms.' If such an impairment exists, the ALJ 'must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.'" *Morrison v. Comm'r of Soc. Sec.*, No. 16-1360, 2017 WL 4278378, at *4 (6th Cir. Jan. 30, 2017) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007)).

Relevant factors to be considered in evaluating symptoms are listed in 20 C.F.R. § 404.1529(c)(3). "It is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Comm'r of Soc. Sec.*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases); *see also Carsten v. Comm'r of Soc. Sec.*, No. 15-14379, 2017 WL 957455, at *4 (E.D. Mich. Feb. 23, 2017).

SSR 16-3p explains that an ALJ's decision must "contain specific reasons for the weight given to an individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so that the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at *10. The ALJ's determination must be afforded deference so long as it is supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* The Sixth Circuit has said that an ALJ's "credibility findings may not be disturbed absent compelling reason," and in general, "are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal quotation marks omitted).

Plaintiff contends that the ALJ erred by "cherry pick[ing]" only evidence from the medical record that supported the ALJ's findings and improperly focusing on the need for objective evidence to substantiate Plaintiff's complaints of disabling pain. (ECF No. 11 at PageID.523, 528–29.) Plaintiff further argues that ALJ overlooked Plaintiff's efforts to obtain pain relief, failed to consider the combined effects of her Crohn's Disease and migraines, failed to consider the side effects of her medications, failed to consider the full impact of her obesity and its relationship to her sleep apnea, and relied on her own lay interpretation of the evidence

11

while disregarding the opinions of Plaintiff's doctors. (ECF No. 523–527.) These arguments lack merit.

Arguments that the ALJ mischaracterized or "cherry picked" the administrative record are frequently made and seldom successful because "the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009)). Moreover, the ALJ is not required to discuss every piece of evidence in the administrative record. *See Kornecky*, 167 F. App'x at 508. The ALJ did not focus exclusively on objective evidence in making her credibility finding. Instead, she considered it as one component in the overall picture in evaluating Plaintiff's subjective complaints. *See Ritter v. Comm'r of Soc. Sec.*, No. 1:14-cv-1286, 2015 WL 7783589, at *5 (W.D. Mich. Dec. 3, 2015) (noting that an ALJ is to consider the objective evidence in addition to the other factors set forth in SSR 96-7p); 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). Such evidence demonstrated that while Plaintiff frequently had back pain, she consistently demonstrated full strength and normal reflexes and was neurologically intact. (PageID.38–39, 272, 275, 373.) As of October 2017, Plaintiff still demonstrated full strength and walked with a normal gait and station. (PageID.421.)

The ALJ also did not overlook or ignore Plaintiff's efforts to obtain pain relief. The ALJ set forth a detailed recitation of the medical record covering several pages, which showed that Plaintiff received frequent back pain treatments, including epidural injections, facet blocks, and lumbar rhizotomies between October 2015 and February 2018. (PageID.39– 41.) In April 2018, Plaintiff underwent a spinal catheter infusion trial with a pump. (PageID.493–94.) On follow up

she reported 75 to 80 percent reduction of pain and was doing very well. (PageID.464.) In May 2018, Plaintiff had a permanent system implanted due to the success of the trial. (PageID.488, 495–96.) Plaintiff also received treatment for her headaches and migraines and, in January 2018, reported that she had not been having headaches since starting Topomax, and she was very happy with the improvement. (PageID.410.) In a May 2018 follow-up appointment, Plaintiff reported having only mild headaches and a migraine twice a month. (PageID.406.) The ALJ observed:

> The claimant has had extensive injections and pain management, but has not yet had any back surgeries during the relevant time period for this decision or any recommended surgery. Fortunately, the claimant has achieved good results with her pain management regimen, including her pain pump. As for headaches, she achieved great improvement with Topomax.

(PageID.42.) Although the epidural injections and facet blocks are considered conservative treatment, *see Wright-Wenger v. Comm'r of Soc. Sec.*, No. 1:15-cv-753, at *6 (W.D. Mich. June 21, 2016), it is questionable whether the pain pump, which was implanted by a surgical procedure, can be considered conservative treatment. Nonetheless, the ALJ found that it provided Plaintiff good relief from her pain, and the Sixth Circuit has consistently held that "an impairment that can be remedied by treatment will not serve as a basis for a finding of disability." *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

The ALJ also properly considered Plaintiff's Crohn's Disease and migraines. The ALJ noted that Plaintiff had received very little treatment for her Crohn's Disease and that she had had only one flare up that was treated with antibiotics. (PageID.40, 43, 436–38.) However, the ALJ credited Plaintiff's hearing testimony and limited her to work that would provide her the flexibility to leave her workstation. (PageID.41.) As for Plaintiff's migraines, the ALJ found that her medication had provided good results that that she was only experiencing mild headaches

and migraines twice a month. (PageID.41–42.) These findings were supported by substantial evidence.

The ALJ also properly applied SSR 02-1p in considering Plaintiff's obesity. SSR 02-1p directs ALJs to consider obesity's effects when evaluating a claimant's disability. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 442 (6th Cir. 2010). The Sixth Circuit has observed that SSR 02-1p does not mandate "any particular procedural mode of analysis for obese disability claimants." *Id*. at 443 (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006)). It has also recognized that an ALJ must "consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009). However, the impact of obesity must be examined in the context of the claimant's medical record because it "may or may not increase the severity or functional limitations of the other impairments." SSR 02-1p, 2002 WL 34686281, at *6. The ALJ explicitly considered Plaintiff's obesity throughout her analysis, noting the absence of any indication in the record that it impaired her functioning in any way. Nonetheless, the ALJ limited Plaintiff to reduced postural activities due, in part, to her obesity. (PageID.41.) As for Plaintiff's sleep apnea, while the ALJ did not expressly address it in her RFC analysis, she found that it was nonsevere given that Plaintiff reported that she had not been using her CPAP machine at night and that nothing in the record indicated that Plaintiff's sleep apnea caused more than minimal limitations in her ability to function. (PageID.36.) Because the record does not support that Plaintiff's sleep apnea required further limitations, any error in failing to expressly consider this impairment was harmless.

Finally, Plaintiff is correct that the ALJ did not expressly consider the side effects of her medications, but as noted above, an ALJ is not required to address every factor in 20 C.F.R. §

404.1529(c)(3) or discuss every piece of evidence. And even if the ALJ erred, it was harmless in light of the other factors the ALJ discussed, including Plaintiff's daily activities and the medical opinion evidence, which were proper considerations. 20 C.F.R. § 404.1527; *see Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). The ALJ's failure to specifically address the side effects of Plaintiff's medications "does not negate the validity of the ALJ's ultimate credibility conclusion." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (quoting *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). Moreover, none of the medical opinions limited Plaintiff to a greater extent than the RFC's assessment.

In sum, the ALJ complied with the regulations, and her decision to discount Plaintiff's subjective complaints was supported by substantial evidence.

## Conclusion

For the reasons stated above, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

An order consistent with this opinion will enter.

Dated: February 5, 2021 /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge